(10 Misc. Rep. 115.)

COURTNEY v. NEW YORK EL. R. CO. et al.

(Common Pleas of New York City and County, General Term. November 5. 1894.)

EVIDENCE—HEARSAY.

> The declarations of an agent, at the time of an accounting by him, as to the source of the moneys accounted for, is not admissible as between third persons, being merely hearsay.

Appeal from judgment on report of referee.

Action by John Courtney against the New York Elevated Railroad Company and another. There was a judgment in favor of plaintiff, and defendants appeal. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

J. C. Thomson, for appellants.

J. Aspinwall Hodge, Jr., for respondent.

BISCHOFF, J. The action was brought by the owner of the premises 322 East Thirty-Fourth street, between First and Second avenues, in the city of New York, to enjoin the operation of the defendants' elevated railroad, which extends along said street from Third avenue to the ferry on the East river, a distance of about

three blocks, and for the recovery of past damages arising from a loss of rents alleged to have been occasioned by the presence of the railroad. The judgment for the plaintiff is assailed for alleged insufficiency of the evidence to show substantial pecuniary damage as a result of the maintenance and operation of the railroad, and for alleged erroneous rulings on the trial.

It appears in evidence that the plaintiff's premises consist of a lot of land which is 25 feet in width and 98 feet 9 inches in depth, and abuts on the railroad; that East Thirty-Fourth street is a wide street, and that the rental value of premises on such streets is uniformly higher than that of premises of like character on other streets; that the ratio of rental to fee value has declined since 1880 to 9 per cent., it having theretofore been 10 per cent.; that from 1871 to about May, 1886, there was erected upon the lot in question a four-story building, 25 feet wide and 45 feet deep, the first floor of which was used as a store, and the three remaining floors, each subdivided into a front and rear apartment of four rooms each, as tenements; that during the year from May, 1886, to May, 1887, the building was replaced by a new one, being 5 stories in height, in width the same as the old one, and 85 feet in depth, the first floor of which was likewise used as a store, and the upper floors each subdivided into four apartments, two front and two rear, of four rooms and three rooms each, respectively, as tenements; that immediately before the commercial panic of 1873 the fee value of the premises was $15,000 and the rental value $1,500; that in the general depression which succeeded the panic these values declined, until in 1877 they had reached $13,000 and $1,300, respectively; that in 1878 the railroad was constructed, and its operation commenced in 1879; that in 1877 there began a period of gradual recovery of real estate values from the effects of the panic, which extended to the locality of the plaintiff's premises; that at the time of the trial these values had reached a point which was in excess of the values prevailing before the panic, but that property abutting on the railroad, and in character and situation similar to the plaintiff's, had further declined below the values of 1877. To illustrate, the premises 318, 320, and 324 East Thirty-Fourth street, which adjoin the plaintiff's premises, and are identical with the latter as they existed up to May, 1886, in 1873 possessed a fee value of $15,000 and a rental value of $1,500, and in 1877 a fee value of $13,000 and a rental value of $1,300. At the time of the trial the actual rental value was shown to be about $1,150, or $150 less than in 1877. At the changed ratio of rental to fee value, these premises were worth at the time of the trial about $12,800 each. Had the rental value of 1877 continued, they would have been worth about $14,450 each, and, if the rental value of 1873 had been restored, about $16,650. From the foregoing facts it was fairly deducible that the plaintiff had sustained a loss of rents averaging $150 a year, and a damage to the fee of $1,875,—the amounts awarded by the referee. Nothing was awarded for the year during which the new building was in process of construction, and, allowing for

the increased space available for rental purposes in the new build-ing, there was nothing to indicate that the rental and fee values of the plaintiff's premises would not have been greater than what they were shown to be at the time of the trial, had the cause of depression of these values not been extant.

Granted that, as between principal and agent, the presumption will prevail, in the absence of evidence to the contrary, that the latter has properly accounted for all moneys which have come into his hands in the course of his employment (Turner v. Kouwen-hoven, 100 N. Y. 115, 2 N. E. 637), it does not follow that, as be-tween third persons, the declarations of the agent, at the time of an accounting by him, concerning the source from whence the moneys accounted for were derived, are admissible in evidence (Bank v. Carll, 55 N. Y. 440). Such evidence is clearly hearsay. An excep-tion exists where the declarations consist of the entries of an ab-sent or deceased agent, made in the course of the performance of duty. 1 Rice, Ev. p. 392, § 213. Hence, the referee properly ex-cluded the testimony of the witnesses Holly and Turley, which was to the effect that the moneys paid them by their agents were re-ceived by the latter for rent of particular premises, and for particu-lar periods, when it appeared from the admissions of the witnesses that the only knowledge which they had of the facts was derived from the declarations of their agents to them. Other alleged errors in the rulings of the referee do not seem to merit discussion. The judgment should be affirmed, with costs. All concur.